Hear ye, hear ye, this honorable appellate court for the 2nd Judicial District is now back in session. The Honorable Christopher M. Kennedy, presiding. Good morning, everyone. Please be seated. Your Honor, the third case we will discuss this morning is the case at 25-0149. Gary Skinner, plaintiff's appellate, v. City of Aurora, defendant's appellate. On behalf of the appellate, Mr. Matthew E. Collins. On behalf of the appellate, Mr. Bernard K. Weiner. All right, Counselor Mr. Robertson, you may begin when ready. Please feel free to adjust the microphone. Thank you very much, sir. Good morning, esteemed panel, justices. My name is Matthew Robertson, and I'm here representing Mr. Jerry Skinner, the appellate in this case, and may it please the court. This case arises from an administrative hearing on code violations. The City of Aurora had the burden of proof to show that one or more individual violations existed at the time of the hearing, and they had to present proofs to support the elements of such violations. Is an admission enough? It could be, sure. Here, I don't think an admission that there was work to be done is enough for a finding of the elements of a violation. You'd have to have an admission that, for example, a roof was not repaired or any other violation. The elements of such a violation would have had to have been admitted. May I ask, so you're saying that final hearing would have been insufficient to establish liability for the building zoning, the violations, let's just call them, but how do you get around, how are you going to impeach, and that's not probably the exactly correct legal word, but essentially, I think, I see your brief as kind of dancing around the issue of impeaching the September 14, 2023 order that says he admitted liability as to the first, the client, excuse me, Mr. Skinner, as to the first 13 violations. Sure. Now, you know, I've seen yes, you argue, oh, you know, they say he's there, but he's not on the record. There's nothing on the record that shows him admitting, but the order is the order. In any civil courtroom, that would be sufficient. How is it, how do we get around that? Absolutely. Excellent question, and it was actually the first thing I wanted to address, so thank you, Justice. The admission, sure, you know, you start with, well, where is it? You know, Mr. Jensen had already entered his appearance. There was nothing on the record. There was no, the hearing officer didn't even know if the guy was present, so where did this admission take place? Was it an ex parte communication that, you know, where they're telling the hearing officer? And are you saying this never occurred? Yes. Based on what in the record supporting it? But let's say it did. I know that's what you wanted to really get at. Let's go ahead and say it did. You nailed part of it, which is that it would only have to do with the first, it would actually be 12 violations, because the first one, it's a list of 13, but it's the first 12 out of the 20, because it's a list of 21 ultimately. So number one was cured already, so we're talking about 12. Exactly, yes. Yeah, 12. It's a little bit hard to track the alleged violations. I guess I should have done a better job of. But I know, I don't blame you. Fair enough. So we're talking about 12 initial violations that he even knew about at that time. So let's say he did admit that those 12 violations existed at that time. First of all, that doesn't show that they existed in February. And, in fact, the subsequent evidence shows that they didn't, for the most part, that 11 out of the 12 were gone by the time of the February hearing. Yes, and what establishes that? Is it the architect's report, which appended the city, all city, undated city, subsequent inspection report? No. There's a mailing, and it is in the record, that was sent to Mr. Springer that would constitute an admission by party opponent. It was dated February 14th. Did I say Springer? God, man. I really wanted to make sure I didn't do that. From now on, we'll know Springer probably means Skinner. It certainly does. I'm so embarrassed. Yes. So the February 14th letter that Mr. Skinner received that showed that nine of the violations had been cured, many of them months before the February hearing, some of them in October, some of them from the city. And is that in the trial court record or is it in the administrative record? It's in the trial court record. Because it's a little bit of a problem. It does. The administrative record contains six rather than nine, and that was the attachment to the engineer's report, because the engineer's report predated that February 14th version of the list of violations. So that list of violations showed nine cures. That is city internal records that would have been presented by Mr. Skinner, but he was prevented from producing those admissions by party opponent at the trial. He had them. But even the six, the six were admitted as having been cured, and then the witness testified that number 11 was cured, and the attorney had stated that three through five had been cured. So either that leaves us with three, depending on the difference between the 14th and the one attached to the engineer's report, or one. So really, when we're talking about the submission, I don't need to get around it. There's only one left, and the one is the plumbing one, number two on the list. The plumbing one, as you can see from the transcript, was hotly debated at the hearing. He mentions Anderson Plumbing having just come in and done some repairs and that everything was done, and that he had a contractor present ready to testify as to that issue, and all that was prevented. Excuse me. I did an Excel spreadsheet listing, using first the original allegations. I'll call it the charging document. And I understand, I understood from later research that, you know, that structure, one through 13, was not carried through to what I'll call the subsequent charging document, which was filed later. I was, number two was unlawful structure. And there's three. So, yeah, because number one was the entry, the issue of they wanted to go in. Inspections. Yeah, that was that one. I'm sorry, which one was the plumbing one? The one right in between should be that, and the engineer did state that that one was carried as well. And then, you know, Mr. Skinner was arguing about that one. That was the, something about that one. No, I do see general plumbing and fixtures, which it appears was later not included in the subsequent charging document. Is that? I thought it was. Okay. Yeah, I thought it was. I'm sure you, this is, I don't, you know, I'm not blaming anybody in particular. I did my best to sort, tick and tie every single violation and figure out, you know, its particulars. So, I messed that one up. Right. Yeah, no worries. So, yeah, three through five were admitted by the attorney to have been cured. Six and seven were cured on 10-17, so months and months before the hearing. There were a couple more, three more that were cured on 11-29. That's eight, 10, and 12. Number 11 was admitted during the hearing to having been cured. When you say the hearing, do you mean the final hearing? The final hearing. That was the electrical issues. The gentleman who testified said that number 11 was cured, although then he still testified that 20 violations remained uncured. He didn't even go down to 19. But, yeah, those have all been cured. And then 12-5, number nine, was cured. And then the fire alarm one was cured. That's number 13 on my list. It was cured on February 14th. So, really, there was just the admission could maybe get them to, all that admission would have been is that in September such a violation existed. That is not an admission that it existed at the time of not only the final hearing, but any other time. And none of the other orders include anything resembling an admission, and the transcript, of course, never includes an admission. The supposed admissions that the hearing officer sought to extract on cross-examination were that there was some work to be done and a lot of work has been done, which I guess could imply that, you know, he said a lot rather than all. That's not enough to establish any particular violation. And I do not imply any particular agreement or disagreement with what I understand to be the city's argument, which is that at some point, I guess November 30, 2023, the continuing fine was set to begin today at $200,000. And I might be not doing any justice to the city in recapping their brief, but it seems very delicate, almost elliptical about saying, well, look, it really doesn't matter how many violations, as long as there's one, then it's $200 a day. The city allows a fine between $50 and $500, $200 in the middle there, and every day is a continuing violation. So therefore, Your Honors, don't worry about any little problems you might observe in the record concerning details. Don't worry about it because the record is sufficient to support a finding of liability on one, and a fine of $200 a day is within the discretion of the hearing officer and they can't meet their abuse of discretion standard. So I wanted to just put that out there for you and let you respond to that, because I don't know how you see it, but I see that as a part of what they say in their briefs. It absolutely is, and how scary is that? It's not what they're saying. It's not what the hearing officer actually did. It's, well, he could have done something else, so it doesn't matter if there were 20 violations. It's just maybe one of them existed. No evidence was presented in November. No testimony was presented in November. No admissions were present in November. They just said 20 violations exist. We're going to go ahead and set a fine. The Hazleton case that I cited says that any kind of issuance of fines or findings as to the existence of violations has to be presented, has to be proved with evidence presented as such. That's the quote. So where's the evidence in October or November when they're setting these fines? And then, sure enough, the final hearing comes along and the hearing officer says, hey, your fine is already done. I don't know why we should bother waiting for the lawyer because there's nothing that's going to change this. That's just wrong and terrifying, and it goes against everything that our country is built on, and just basic fair play and justice are violated by just issuing fines because the city says so. I don't think that's how we're supposed to operate here. So that kind of blends into the concept of due process. If they're going to show that 20 violations exist and fine you based on the existence of 20 violations, well, they should present something. They should have to do more, as the case law that I cited says, they have to do more than just say that it exists. It isn't too much to ask, as the case law says. It isn't too much to ask for the city to do more than just say it. And that's all they've done here. In fact, that's all the witnesses even did at the final hearing was just say there's 20 violations. Despite our own records, there's 20 violations. And so what did the hearing officer do? He found that there was 20 violations and didn't let us even try to refute any of it. Concerning the issue with the hearing that you raised, that the hearing officer did not wait for the attorney, who apparently was outside conducting other business, you cite the Six Brothers King Drive case. But that case where the ‑‑ I think it was a building and zoning violation. They went ahead without an attorney, but there the defendant was a corporation, which really can't be pro se as they used to be called. Here, I would add, the attorney did not object when he returned to the hearing room to whatever had preceded his arrival. Does that matter? It absolutely does. Here, and that's a big part of the city's argument, is the lawyer could have come in and said, let's start over. He walks in, first thing he hears is, well, there's been admissions that all these violations are existing, and here's what the fine amount is. What's he going to do? Can we have a do‑over, sir? That isn't going to work. So all he could do at that point was argue against the fine. That's the argument is, well, by arguing against the fine, he admits that Mr. Jensen admits that the fines had a basis. First thing he heard was the hearing officer making his decision. It's too late at that point. And the Six Brothers case is a great example because there they said, well, even if you're going to choose, and there's other case law that says if you're going to choose speed or justice, choose justice every time. Here, they couldn't wait 10 minutes for Mr. Jensen to be there. They couldn't wait the 10 minutes so that the hearing officer wouldn't have been cross‑examining Mr. Skinner. They couldn't wait 10 minutes so he could be represented by counsel, 10 or 15. I mean, that just goes against what all the case law says. And in response, they say, yeah, that's okay, because why do we have to wait for him? They cite no case law. In fact, Section 2 of the city's brief contains no cases. Well, what relief are you seeking exactly? I'm seeking for the administrative hearing to be overturned. That's it. And I guess it would be remanded for further proceedings. And what would the logic being that although there were 13 violations admitted, then there's no due process? Due process, I guess, was offended such that there shouldn't be any penalty? Well, it's twofold. So there's due process and manifest weight. The manifest weight is that they never proved up any violations. Well, but then we go back to that December 14 order. Well, that's September 14, yeah.  Well, yeah, that's fine. I'm sorry to be pedant and correct the Honorable Justice. So all that's an admission of is that the violation existed in September, and it was won. That was very hotly contested at the time of the trial. The Aurora Code states that it's an absolute defense, cure is an absolute defense at the time of the hearing. And he was not only was he prevented from the hearing. I understood that to mean at the time of the adjudicatory hearing. I'll call wherever guilt or liability is determined, the adjudicatory hearing, and then there's, you know, I'll call it the sentencing hearing. Obviously, that's inappropriate. But the penalty phase, the penalty hearing, perhaps. And here I'm asking, not, you know, trying to cross-examine you. But as I reviewed the statute, I understood that meant if you get cited for a B&T violation, if at the time of the first hearing or the adjudicatory hearing it's cured, you're done. The city's policy is apparently spurring compliance, not fines. Sure. At least in that regard. So that initial mailing to Mr. Skinner was sent in very late August. And that's in the record. I believe it was August 22nd. That first hearing is September 14th. So nine, 23 days later, you know, he admits that it hasn't been cured yet. Possibly. I still haven't seen that or how such an admission would have been obtained off the record. But even assuming it, they only gave him 23 days. The case law says that a code violation is only shown by once he's given notice, and like I said, he had less than 23 days since it has to get mailed to him. So he had less than around three weeks to fix it. And what it says is that you have to be given a reasonable amount of time. I would say that even if it existed as of September 14th, one violation, not 20, then he should have been given a reasonable amount of time to fix it, which he was. They would have at least continued it from there. And then, you know, when it comes time for the – and there again, you can't impose a fine without the presentation of evidence that's presented as such. In September, there was no evidence stated. Again, it was just the city state that said it, and therefore, that's good enough. There was nothing that said here's what the actual violation is, here's what the details are that could have been refuted. Mr. Skinner was not afforded the opportunity later to present when that work was done. So we really don't know what the actual facts were. But I don't think that an off-the-record ex parte supposed admission that wasn't read into the record should be used to extract $30,000 from a citizen of this country. Is it your position that the city couldn't impose a fine without evidence on a single violation or on all the remaining violations? Well, both. If you're going to impose a fine as to a violation, then the city has the burden to show by preponderance of the evidence that the elements of that violation exist. Or just one. For each one. If they prove one, then they can fine on that one. And that could be $200 a day. If that's what the order was, yes. That's not what the order was here. The order was $200 a day on 20 violations, and then also $500 per violation. So even if they did prove one, well, that means they only stole $9,500 from the guy on the other 19. That's still horrifyingly wrong. And the fact is, here, they can't even show that they proved up the elements for even a single violation at any point in this entire proceeding. I am so far over my time. But do you guys have... I think you will have time on rebuttal. I appreciate it. Thank you very much, Associates. Or, Justices, I meant to say. Thank you. Thank you. Mr. Weiler? Yes. All right. You may proceed. Good morning, Mr. and Mrs. Justices. I'm Bernie Weiler, appearing on behalf of the City of Aurora. This matter started with a summons and a list of violations that numbered 13 violations and summoned the defendant to appear on September 14th. On that day, the transcript shows that pretrial conferences were held and that when this case specifically was recalled, the transcript shows that specific violations needed to be cured by a date certain. Okay? The transcript for the 14th, not only does the order indicate that there was an admission that the violations had occurred, but the transcript for that day indicates that there were specific discussions about when violations 9 through 13 would be cured. The matter was then continued on numerous occasions. Okay? The due process that is the... Just backing up. So 1 through 8, then, is it reasonable to assume that those were not admitted? No. It was that those would need to be cured by a certain date, and you would look at the orders that specify that some of them are life safety issues. Right, but 9 through 13 are the only ones mentioned. Those are the only ones that were mentioned with regard to when they needed to be, by which date they would need to be cured. You will see that that order reserved fines based upon the compliance that may or may not have occurred, but specifically. So the point is that counsel has said there's no indication that there was any discussion, et cetera. The transcript does show that the court specifically addressed at least four of those violations with respect to the reservation of the fines, indicating that those must be cured. It doesn't indicate that none of them were. I don't read it quite that way, but I'm not arguing about it. Sure. But it certainly says, it's continued, the order says that defendant admitted liability. That's correct. And the matter was continued to October 19 for 9-13. So presumably there was going to be some discussion about violations 9 through 13. Proof of compliance is checked. Fines may be assessed as follows, that a different box is checked, and then it says what I think the abbreviation for is reserved. That's reserved. That's correct. But I guess, you know, I, like Justice Kennedy, wonder what does it mean about 1 through 8? Were they cured by then? They were not. They were not. And how would we know that looking at the order? By that order, it indicated that there was an admission, okay, and that there was also an indication that fines would be reserved with the expectation that at least four of them would be. Right, but the question is, what was there an admission to? Just 9 through 13, since those are the only ones that now are required to be cured? Or do we just assume that 1 through 8 were going to be cured at some unforeseen date in the future? There would be an assessment of fines at some time down the road. On 9 through 13? I believe that the order specifies that there was an admission of liability to violations. Which ones? To the violations of the violations that were set forth in the order. In the charging dynamic, I do think Justice Georgeson raises a good point, because the order does then focus on 9 to 13. Maybe that was, since there's nothing in the transcript, the order itself is generic. Right. I don't think that that's an unreasonable question. Perhaps the admission to liability was 9 to 13. Perhaps that's why 9 to 13 were going to be looked at for compliance in October, fines reserved. But we see that it was just continued for status of repair a couple of times. That's correct. Until this alleged, until there was an order indicating continuing fine to begin today, $200. Per day. Right? Yes. So that they were $200 per day. I'm assuming based on the scheme and all.  So if you look at that, there were two methods that were proposed by the court. One was per violation, and that was then converted to a per day, a per day fine for existing violations. And with regard to this, this matter was continued nine different times to give the defendant an opportunity to bring this property into compliance. And during the course of this, and I believe Your Honor had indicated that there was a subsequent, what you would refer to as a charging document, but was notice of violation is I think the language that the city uses, which was indicated that there were at least 20 violations. It was a charging document. Exactly. The amended. The amended document. I think they refer to it as Exhibit A. Whatever happened to those additional charges? Well, then what occurred is that on the 29th, and even though counsel has indicated that there was no evidence, there were two inspectors. He went back. The 29th of February. On the 29th of February, the transcript shows that Inspector Blogg testified that as of those 20 violations. So that was his charge. One had been occurred. Yes, that was on the 29th.  Here's my problem with that. The order of February 15th says the matter was continued for status of repair, which is actually what every single one of these orders has continued to. And, you know, while due process is a flexible concept, this is a, you know, I don't know if it's a proper term, but certainly compared to a court of law, the administrative hearing would forgive some expediency. Certainly. I think, you know, that might be reasonable to say. What I'm not willing at this moment, and you do nothing to defend this in your brief, what I'm not willing to say is that a court hearing that's set up for status can be converted to a trial. So any argument you have in that vein would be appreciated. Because I do think somebody has the right to know when their matter will be decided or what I call adjudicated. Okay. Well, with regard to that, there had been an adjudication. There had been an adjudication. There was an adjudication. It was September 14th. That's correct. He admitted liability. That's correct. I'm not talking about that. I think you understand that. I'm talking about the additional charges. That's right. And so. And I searched in vain for, one, an explicit explanation as to what happened with those. And, two, then just moving on, what in the record could satisfy me that the right to know what's going to occur in court was satisfied? And, again, you know, appellate courts, trial court, traffic court, it's the same thing, but it moves a little bit quicker. B and Z hearings, yes, I can understand the administrative body might not run exactly the way a trial court judge might expect. But that means that a hearing where it's for status of repair can be deemed an adjudicatory hearing. Well, with regard to what. Is that the position of the city of Aurora? The position of the city of Aurora is that the process is that there are, that there is a notice of violation. Okay. And that the hearing is then conducted in which there was an understanding that there were violations. There's continuation as to whether or not. We have an order that declares. That's correct. Then the question then becomes. And since everything after is set for status of repair, I don't, I'm concerned that the process that you are defending. That's correct. Includes, you know, we're just going to find somebody in violation whether they know that's going to happen that day or not. And I just want to make sure that we all agree that comports with due process. But I'm hearing that the city thinks that's a fine way to run a grievance hearing. But due process indicates that they have an opportunity. It's a flexible process. Do they have an opportunity to cross-examine. Notice and an opportunity to be heard. But notice is important too or did I miss that in law school? Well, with regard to, with regard to the notice, the notice was, the notice of violations had been served on the defendants. But the hearing that day was for status of repair. Okay. But there were, but there, the issue is that there was an adjudication that fines would, would, would begin to run with regard to the, on a daily basis. Okay. And that the continuation is to determine whether or not there has been compliance with that order. And that's what the proceeding, the continued proceeding was about. So back to my original question is what happened with those seven, the additional seven charges or was it eight? It's difficult to keep track because the numbers were not consistent. Right. But your answer was, well, at the February 29 hearing, there was testimony that supported at least one of the additional violations. That's correct. Yes, that's your argument. But the issue is, was there notice of that to the defendant? There was, there was notice that there were, that there was a finding of violations. Status of repair. Right. That there was a status, that there was notice of the, of the violations and it was continued to make a determination. Okay, I think the difference here is that it, let's assume there was an admission to the original 13. There has never been, on this record, at least we can't find it, an admission to the subsequent 20. So how do we get to a determination of imposing a fine because it hasn't been cured when the violations have never been proved up? The violation. The extra 20.  There was a determination that fines on the unamended violations which had been admitted. So all we're talking about is those four? Right, right. And whether or not, the city is entitled to complete compliance. Whether or not there's 5 or 10 or 15, it's entitled to this process to assess fines and it was, and it's authorized by state statute and by the ordinances that have been adopted in compliance with those statutes to assess fines in order to achieve compliance. And that is the authority as to how those, as to how those fines are determined is vested in the administrative hearing officer who is regarded as the expert as to how do we achieve compliance with these ordinances. So whether there are, whether there are 4 or 3 or 2, the city is entitled to complete compliance. And that's what this, that's what this is about. Throughout the course of this, there has never been a motion to the attorney to say, hey, wait a minute, I want to, I want to vacate that order. I want to cross-examine the witnesses who said that violations were still existing. And I want to make a determination that all of this time has not passed with regard to when those violations had first asserted, which was back in June. But we're only talking about 9, 10, 11, 12, and 13. That's it. It's the only things that have ever been proved up, either by admission or evidence. I don't believe that's the case. Can you point and tell me what day a witness came forward and said the additional violations, here it is, where the defendant had noticed that it was going to be a trial or an adjudicatory hearing, presented evidence to say, here's the code, here's the violation. Yes. And those violations were admitted. 1 to 13. I believe. According to you, 1 to 13. I believe they were all admitted, and the direction was come back and. . .  There weren't the additional 20 on the day of this alleged admission. That's correct. So how can there be an admission to the additional 20 when they hadn't, he hadn't even received notice of them? There was not. And I believe the question is to whether or not. . . There was no admission. That's what you're saying. There was evidence, there was testimony on the 29th. And the question is whether or not this should have been a trial. That was your question. And so, but there was the two inspectors testified on the 29th that there were 20 violations prior to February 26th. I believe 30 days that one inspector testified that he made an inspection and that all of those 20 were violations and introduced the evidence of those. And then that was Inspector Alcaraz, and Inspector Blogg testified that one of those 20 had been cured. So the question is to whether or not that constituted an appropriate hearing. At least there was evidence with regard to that. The question, though. . . But the issue is. . . That the. . . The issue is. . . Was that due process? Well, that's. . . Those 20 incorporated. . . Unincorporated. And you will see on that charging document the dates upon which those. . . Which. . . Dates upon which those violations were first noted. And there were ones that were in June, and there were ones that were added in October. So it shows when the violations were at issue. All of those 20 that were on that issue, those which included those that were in violation as of the date of the original charging document, which was June of 2023, were still in noncompliance according to the witnesses who testified on that, on the 29th. So are you conceding that the additional violations were neither adjudicated nor admitted? I would. . . It's difficult to make a concession here. But what I would indicate is that there are at least violations to which there had been an admission and which time had occurred that there were multiple dates between June and February at which it was appropriate to have a daily fine of $200 or $500 for that matter. June wasn't charged until September.  But the violations had occurred in June. So the charging document said as of June of 2023. . . So you're saying you're entitled to $200 a day back to the day that he . . . That's correct. . . . that the violations were noted, were just discovered?  Not without notice to the owner? The violation, yes. But if we just go back to September, that's . . . I don't recollect that argument in your brief. Pardon me? I don't recollect that argument in your brief. And you're entitled to a fine back to June. Oh, I was indicating that those violations had existed since June. Okay. And they were on both charging documents is what I'm indicating. The admission took place in September. And I would concede that there's no authority to fine someone on a daily basis prior to an adjudication. I have not made that argument. I didn't mean to imply that. But the question was, how do we know which violations were at issue on the 29th? How hard would it have been . . . Pardon me? . . . to keep track of what the violations were, whether or not they'd been cured? And additionally, when the new charges were brought, how hard would it have been to set those for hearing? Well . . . Because to do process . . . Let me just . . . Sure. Excuse me for jumping in. I know that's . . . Yeah. . . . probably difficult. But, you know, it's a flexible concept. Right. And so, you know, we look at the nature of the hearing and all that. And I also think we look at the benefit and burden to organizational processes. Because, you know, there's no criminal court in the world that would say, well, you know, there's a bunch of uncharged counts, but when you're sentencing on the original charges, we learned that you did the new ones, too. And don't worry about the fact that none of them were set for trial. Nobody would do that. I'm not saying that's what's required here. But I am asking . . . Sir? How hard would that have been for the city of Aurora to run their BMZ hearing room in such a way that these things were being kept track of? Because it's clear, at least from this case, that in this case they were not. I wonder if that's a practice, that it, you know, here we'll just blow it all up. It's 200 a day. Whether you have one violation or 20, I have questions about that. Yeah. Because it might affect the discretion of the hearing officer if there's 20, you know, some of which are serious life safety, some of which might be a loose faucet in one of the bathrooms. You know, it might be, speak, an assessment of the number and the gravity of the violations as he or she imposes their discretion. So I have questions about that. But how hard would it have been to keep track of the fact that there were new charges which had not been adjudicated? Real difficult? So difficult that it was better, it was okay for the city of Aurora to run its BMZ room in such a way that it could just set everything for status, but everyone should understand that a trial could happen. A trial could break out at any moment here, people. All right. So I think we need to look at the specifics of this case to answer that question. And with regard to these adjudicated hearings, there were eight separate meetings between the city that this was called to the hearing room on eight separate occasions during which some discussion was had. With regard to the difficulty of that, as a general matter, as a general matter, what is discussed at those hearings is, is there going to be compliance? Okay? And in this case, if we do examine the record, the reason that this case was brought to conclusion was the issue both that was asserted in the documents that were supplied by the architect that was engaged by Mr. Skinner and by the officer of the court who communicated what the communications with counsel were, which indicated that at that point, Mr. Skinner was in the process of selling the building and he wasn't certain that he wasn't really planning on doing any further matters. So with regard to I think... The only reason that adjudicating the additional seven charges, since it didn't look like they were going to go away, it became, I would say, if it were me running that hearing room, to, one, keep track of them in two, seven, four years. Yes. And so the... But I think that we don't want to indict the entire process. When you ask the question, how hard would that have been, I do not want... It's a question of the onset. So the question that that could have been done, certainly, Your Honor. Okay? Counsel, I have a couple things to point out about the process. I know. We're talking about the process and not wanting to indict the entire process. I think there's certainly cause for doing so, including such comments on the record as, we're done with our court call that started at 9.30 a.m. It's now 9.44. If your attorney's not present, we're going to have to proceed here. We can't wait all day. All right? So 14 minutes into the call, the day is apparently going to be over and such that counsel is excluded from the hearing or at least not brought in when he's apparently outside. Other comments include, at another appearance, there was an indication that on December 14th we had assessed a fine of $2,800. That is not supported by the transcript of December 14th, nor is it supported by any order that I've seen in the record. Further, at the end of the so-called hearing, the hearing officer says whether there is 20 or less than 20, and this is after attempting to solicit an admission blatantly from the defendant here, and some of the work still needs to be done, correct? Mr. Skinner starts to answer, we keep finding, et cetera, and he cuts him off and says, so, again, we can agree that some of the work has been done and some of the work still needs to be done. That is not what Mr. Skinner was saying. And then he says to the hearing officer, whether there is 20 or less than 20, we can all agree that there are still some violations that remain uncured, and then asks the city if they want, and they want everything, and he says $28,200. So, however this case comes out, I would hope that you take the message back that these procedures are lacking. So, any other questions? I do have one other comment. I will say I was very concerned about proceeding, albeit at an administrative level, knowing Mr. Skinner had an attorney, knowing the attorney was in the hallway, and were 14 minutes into the court call, and then proceeding to, as Justice Kennedy just enunciated, basically cross-examining Mr. Skinner. I mean, was there a pattern of misconduct by this attorney? Was there a reason that he wasn't given just a modicum of consideration to appear? I mean, we hold pretty strict up here, if you're not here, you know, but in a trial court, I mean, come on, you know, you can't be everywhere. You can't be everywhere at 9 o'clock. You can't be everywhere at 930. It seemed awfully harsh.  With the exception of when he did appear, he was asked, what do you wish to do? Okay. And the response was, the money could be better applied to curing the violations, which, again, is, you know, rather than saying, I would like to call my witnesses, I would like to have a continuance, he had indicated that there was work to be done. When he comes in, it's done. It's a done deal. We're finished for the day. Here's my order. I kind of agree with counsel. What is this defense attorney supposed to say? Well, I don't believe that is correct. I believe when he came in and said, I now recognize that the attorney is here, called upon the attorney to ask, what do you wish to do? And that attorney elected to say that money could be better applied to making the repairs to which the city was entitled. I've read it. I saw it. Okay. And that is an issue. Okay. And the question with regard to how hard would it have been, okay, I think needs to be taken into consideration with regard to the fact that this matter had been before the court and had been a subject of discussions between the city and the homeowner or the property owner for a period of eight or nine separate appearances between the 14th of September and the 29th of February. And with regard to that, the reason it was brought to a conclusion at that time is because of the assertion that there would be no further compliance. And so that's why it would indicate that that date had some semblance of irregularity that would not necessarily apply to other cases. Exactly how was the fine calculated? Pardon me? Exactly how did the fine get calculated? We wind up with a figure of 28-2, I think. Well, the city had made a recommendation of the number of days that had run, and then also, and this goes to the question, and I would indicate that the calculation of the fine, if we look at what the city had indicated, was to apply the $200 a day from the date that it was first indicated, which is in November, which resulted in an 18- November 30. Yes, which resulted in an $18,000 fine. Then the indication was that based upon the testimony of Mr. Alcarez, that 20 violations remained. So that's 91 days between November 30 to February 29th, right? Yes, and so she suggested a fine. And 91 times 200 is $18,200. Yes, and that's- So the remainder of the fine- Must be- Requested was, and if we look at the transcript, okay, that's there in black and white, the request was a $500 fine for each of the violations that were uncured, which she calculated as based upon Mr. Alcarez's testimony of being 20 violations times $500 a day. So that's what we get back to they were never cured up.  So we're still back to the 9 to 13. Yes, so there was- So that- That was the suggestion. Okay, now the question is- What was the suggestion? That was the request of the city. In the brief? In the brief. In the transcript. You asked how it was calculated. Oh, I see. And the response was that based upon the conversation, or based upon the response to the hearing officer's request to the city, what are you looking for? They said $18,200 for the $200 of fines that were previously assessed and have been uncured, plus $500 for the 20 violations that we have been discussing, okay, as to whether or not that should have been. So that's what they were indicating. Now, whether or not the hearing officer imposed a fine in that exact amount, whether or not that that was his method of computation, or if he indicated that those fines, that there were violations that had occurred going back to September that he was going to assess, I believe that there would be evidence to support that. But there was, to answer your question, he did not make any calculation on the record. The question is whether or not there would be a sufficient amount to support that fine. So we believe that if you go back to September, there would be sufficient. It doesn't work out by my math, which is, you know, to be suspicious of. But from September 14 to the 29th is, let me put it this way, $28,200 divided by 200 is 141 days. Right. And that doesn't add up. No. So the question is, was it within his authority? I believe that it was. But to answer your question as to how it was calculated, there's no evidence in the record as to how he did that, as to how he came to that number, although it was in direct response to the city's request. Thank you.  Thank you, Counsel. Mr. Robinson, you're rebuttal. Thank you, Justices. And again, may it please the Court, starting with that last thing with the 9 through 13 that we were discussing, the city's internal records show that those were all cured before February 29th. There were two only that were cured on 11-29. Actually, before there was even a daily fine imposed. That's number 10, the clearances, and number 12, the aisles. Those were cured before 11-30. Number 13 was the latest one that was cured. That was cured on 2-14. This is, again, according to the city's internal records. Number 9 was cured on 12-5. And then the witness testified that the electrical items had been cured at some point, although he didn't say a date. Given that they were all cured, why wouldn't the daily fines have stopped prior to February 29th if they were truly based only on the submission, the nebulous submission that the city is heavily relying on in September? If it's based just on that admission, why did the daily fines never stop? The city also just now relied on the engineer's report. The engineer's report was submitted in desperation by Mr. Skinner after the hearing was done, after the verdict was in. The hearing officer never considered that. So how telling is it that as far as evidence was being presented to the court, upon which the city had the burden to show evidence of elements of a violation, how telling is it that they have to rely on evidence that wasn't before the hearing officer? The fact is they issued the fines $500, the maximum amount, times 20 violations when they knew for sure that the majority of them did not exist. That's terrifying. They issued daily fines all the way through February 29th based on violations that they knew didn't exist. That's terrible. That goes against everything we believe in as a country. This is not how we do things in the United States of America. And even more horrifying, he wasn't allowed to present a case. He would have been able to present those records, and a reasonable hearing officer would have had to determine, well, geez, your own records say that half of these violations are gone. And then you testify to a few more. The majority of these violations are gone. I can't issue a $500 fine when the majority of these fines are gone. When we're down to one, maybe two that have been sort of identified, as the hearing officer said, identified, not proved, they were sort of identified, and we're going to issue $500 fines on phantom violations that the city's own internal records prove did not exist. The Supreme Court says, this is the government. These aren't just two litigants. This is the government doing this to one of its own citizens based on no evidence. Mr. Skinner could have presented those internal records for the omissions. He could have presented his contractor, who was present, ready to testify. He could have presented his engineer's report, which showed the cure of three more of the newer violations. And then the omissions of the city witness and the city attorney could have, again, been presented as omissions by party opponents. So right there, we're already at about, we're down to like two of the 20 violations that were even at issue. And as to those two, the city did not try to even argue in its briefs or before your honors that they had proved, with evidence, any of those violations. And yet, here I am standing before you, complaining of a $10,000 fine based on phantom violations and a daily fine that they never turned off, despite knowing that the supposed violations had had, by their own records, long since been cured. The hearing officer needed evidence in order to make a finding. Did not have evidence here. And beyond that, I'll just take any further questions that your honors may have. I have about 30 seconds. All right, thank you very much, counsel. We will take the matter under advisement and issue a ruling in due course. We will recess.